# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 26, 2011 Session

## CHRISTOPHER J. ETHERIDGE, by next friends and parents, SELENA A. ETHERIDGE and CHRISTOPHER J. ETHERIDGE (SR.), SELENA A. ETHERIDGE; and CHRISTOPHER J. ETHERIDGE (SR.) v. YMCA OF JACKSON AND WEST TENNESSEE, ET AL.

**Direct Appeal from the Circuit Court for Madison County**
**No. C-09-165      Roger A. Page, Judge**

**No. W2011-00495-COA-R3-CV  - Filed January 27, 2012**

A minor was injured in June 2008 when a sink, installed in November 2004, shattered.  Suit was initially filed in June 2009, and Defendants were added in September 2009 and April 2010.  The trial court granted summary judgment to Defendants based upon the construction statute of repose, Tennessee Code Annotated section 28-3-202, *et seq.*, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S.,, delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Todd A. Rose, Paris, Tennessee; Les Jones, Memphis, Tennessee, Kate E. Rhodes, Paris, Tennessee for the appellants, Christopher J. Etheridge, by next friends and parents, Selena A. Etheridge and Christopher J. Etheridge (Sr.), Selena A. Etheridge; and Christopher J. Etheridge (Sr.)

James B. Summers, Jessica A. Benton, Memphis, Tennessee, for the appellee, John B. Riddle

Bradford D. Box, Nathan E. Shelby, Jackson, Tennessee, for the appellee, David Haltom

## OPINION

### I. FACTS & PROCEDURAL HISTORY

In 2004, general contractor John Riddle hired sub-contractor David Haltom (together, "Defendants") to relocate and replace plumbing, wiring and fixtures in the men's and women's restrooms of Saint Andrews United Methodist Church ("SAUMC") in order to make them ADA compliant. Specifically, in the men's restroom, Mr. Haltom relocated an electrical switch, installed a receptacle for a new water heater, and relocated the plumbing for, and replaced, the urinal and sink. However, in apparent violation of the applicable local codes, no permits were obtained for the project and no final inspection of the work was made.[1] Notwithstanding these violations, when Mr. Haltom submitted his invoice to Mr. Riddle on November 3, 2004, the sink, urinal and water heater were fully functional.

On June 10, 2008, six year old Christopher J. Etheridge, Jr. was injured when, while under the care and supervision of the YMCA, the sink in the men's restroom of SAUMC shattered when he propped himself up on it to view himself in the mirror. The minor's parents, Christopher J. Etheridge, Sr. and Selena A. Etheridge ("Plaintiffs") initially filed suit on his behalf against the YMCA and SAUMC in a June 4, 2009 complaint. It its July 7, 2009 answer, SAUMC alleged the comparative fault of, among others, John B. Riddle Construction Company, Inc., which it claimed had installed the sink in question. On September 24, 2009, Plaintiffs amended their complaint to add as a defendant, among others,

---

[1]In his affidavit, City of Jackson Department of Building and Codes Director Tom Winbush testified, in relevant part:

> In 2004, the applicable Construction Code in force in the City of Jackson required all construction projects to have a construction permit issued by our office before construction began if the cost of the construction exceeded $100.00[.] Also, the Construction Code required electrical permits and plumbing permits, regardless of the cost of the project.
>
> In 2004, a construction project in the City of Jackson that cost over $15,000.00 and which included, among other things, the replacement of a sink as well as wiring an electrical outlet would have required the purchase of a Commercial Building Permit from our office; it also would have required a plan review by our office before the start of any construction on the project; and it would have required an electrical permit and plumbing permit.
>
> . . . .
>
> When our office issues permits for construction projects, the applicable regulations require that we be contacted in order to do a final inspection of the project before we certify that the project has been satisfactorily completed.

Riddle Construction Co. Inc.'s invoice to SAUMC totaled $15,150.00.

John B. Riddle.[2]  Mr. Riddle then answered, alleging the comparative fault of David Haltom, the sub-contracting plumber who had actually installed the sink.  On April 19, 2010, Plaintiffs filed a second amended complaint adding Mr. Haltom as a defendant.

Defendants Riddle and Haltom moved for summary judgment on the ground that the statute of repose, Tennessee Code Annotated section 28-3-202,[3] barred Plaintiffs' claims, as the sink had been installed in November 2004 and the claims against them had not been filed until September 2009 and April 2010, respectively.  Plaintiffs opposed the motions by arguing that Defendants had failed to obtain the requisite permits/inspections for the construction project, and therefore, that the project was not "substantially complete" so as to commence the running of the statute of repose.  Alternatively, they argued that the statute

---

[2]In the trial court, Mr. Riddle argued that he was an improper party, as "he is the President of John B. Riddle Construction Co., Inc., a distinct and separate legal entity that contracted for the remodeling of the restrooms at issue and remains a valid and existing corporation."  In response to this argument, Plaintiffs sought to amend their complaint a third time to "correct the style of the Second Amended Complaint by changing 'John B. Riddle' to 'John B. Riddle Construction Co., Inc."  However, the trial court subsequently granted summary judgment to Mr. Riddle, rendering Plaintiffs' motion moot.  In anticipation of an appeal of the grant of summary judgment, the trial court deferred ruling on Plaintiffs' motion to amend their complaint, stating that if this Court reverses the grant of summary judgment, "Plaintiffs may renew their Motion for Leave of Court to File Third Amended Complaint and same will be considered by the Court at that time."

The propriety of naming Mr. Riddle, individually, as a defendant is not presented as an issue before this Court.  Therefore, no reference to actions taken by John Riddle or by John B. Riddle Construction Co., Inc. should be construed as an expression of this Court's opinion on this issue.

[3]Tenn. Code Ann. § 28-3-202 provides:
"All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after **substantial completion** of such an improvement." (emphasis added).

Additionally, Tennessee Code Annotated section 28-3-203 provides:

"(a) Notwithstanding the provisions of § 28-3-202, in the case of such an injury to property or person or such injury causing wrongful death, which injury occurred during the fourth year after such substantial completion, an action in court to recover damages for such injury or wrongful death shall be brought within one (1) year after the date on which such injury occurred, without respect to the date of death of such injured person.

of repose was tolled by Christopher Etheridge, Jr.'s minority.[4]

The trial court, disagreed, however, finding that the construction project was substantially completed in November 2004, and therefore, that the claims against Haltom and Riddle were time-barred. It further found that the statute of repose was not tolled by the injured's minority. Accordingly, the trial court granted summary judgment to defendants Haltom and Riddle, and its orders were made final pursuant to Tennessee Rule of Civil Procedure 54.02. Plaintiffs timely filed notices of appeal, and the matters were consolidated by an order of this Court.

## II.  ISSUES PRESENTED

Appellants present the following issues for review, as summarized:

1.    Whether the statute of repose bars the claims against Defendants;

    A.    Whether the project was "substantially complete"; and

    B.    Whether the injured's minority tolls the statute of repose.

For the following reasons, we affirm the trial court's grants of summary judgment.

---

[4]Plaintiffs also argued that even if "substantial completion" occurred on November 3, 2004, that their initial complaint (filed June 4, 2009) and their first amended complaint naming Riddle (filed September 24, 2009) were filed within *five* years of that date, pursuant to Tennessee Code Annotated section 28-3-203. However, the trial court correctly noted that, when an injury occurs in the fourth year following substantial completion, as was the case here, Tennessee Code Annotated section 28-3-201 *et seq*. provides an additional one-year grace period *from the date of injury*, not from the end of the initial four-year period, during which suit may be filed. Thus, Plaintiffs had until June 10, 2009–one year from the date of the injury–to name Defendants.

    We also note that although the initial complaint was filed prior to the running of the statute of repose, and Plaintiffs' complaint was amended within 90 days from SAUMC's answer alleging Mr. Riddle's comparative fault, Tennessee Code Annotated section 20-1-119(b) cannot operate to extend the statute of repose. *See* **Tenn. Code Ann. § 20-1-119(b)** ("This section shall not extend any applicable statute of repose, nor shall this section permit the plaintiff to maintain an action against a person when such an action is barred by an applicable statute of repose.").

### III.   STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green,* 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)). "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Id.* Not every factual dispute requires the denial of a motion for summary judgment. *Id.* at 514. To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." *Id.* (citing *Eskin v. Bartee,* 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999)).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Martin,* 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion--that the moving party is entitled to a judgment as a matter of law." *Green*, 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't,* 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002)).

### IV.   DISCUSSION

The parties to this appeal agree that the statute of repose set forth in Tennessee Code Annotated section 28-3-202 *et seq.* governs Plaintiffs' claims. The statute provides that

> All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any

such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after ***substantial completion*** of such an improvement.

(emphasis added). However,

Notwithstanding the provisions of § 28-3-202, in the case of such an injury to property or person or such injury causing wrongful death, which injury occurred during the fourth year after such substantial completion, an action in court to recover damages for such injury or wrongful death shall be brought within one (1) year after the date on which such injury occurred, without respect to the date of death of such injured person.

(b) Such action shall, in all events, be brought within five (5) years after the substantial completion of such an improvement.[5]

**Tenn. Code Ann. § 28-3-203**.

'Substantial completion' means that degree of completion of a project, improvement, or a specified area or portion thereof (in accordance with the contract documents, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended; the date of substantial completion may be established by written agreement between the contractor and the owner.

**Tenn. Code Ann. § 28-3-201(2)**. The dispute on appeal, however, centers on whether the statute is tolled by the injured's minority, and if not tolled, whether the period for filing suit following "substantial completion" of the improvements has expired. We address these issues in turn.

---

[5]Tennessee Code Annotated section 28-3-205 contains an exception for fraud, which is inapplicable in this case.

### A. Tolling of Statute of Limitations

We first address Plaintiffs' argument that the statute of repose set forth in Tennessee Code Annotated section 28-3-202, *et seq.* has been tolled by the injured's minority. In support of their tolling argument, Plaintiffs rely upon both Tennessee's legal disability statute, Tennessee Code Annotated section 28-1-106, which provides:

> If the person entitled to commence an action is, at the time the cause of action
>
> accrued, either within the age of eighteen (18) years, or adjudicated incompetent, such person, or such person's representatives and privies, as the case may be, may commence the action, after legal rights are restored, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the restoration of legal rights.

and its exception, Tennessee Code Annotated section 28-1-107:

> The provisions of § 28-1-106 shall not apply to actions on a statute for a penalty or forfeiture, or to actions against the estate of a deceased person brought more than seven (7) years from the death of the deceased, and the time the cause of action accrued, nor to cases provided for in § 28-2-105.[6]

"Statutes of repose operate differently than statutes of limitation, primarily because statutes of repose typically begin to run with the happening of some event unrelated to the traditional accrual of the plaintiff's cause of action." *Penley v. Honda Motor Co., Ltd.*, 31 S.W.3d 181, 184 (Tenn. 2000) (citing *Cronin v. Howe*, 906 S.W.2d 910, 914 (Tenn. 1995); *Wyatt v. A-Best Prods. Co.*, 924 S.W.2d 98, 102 (Tenn. Ct. App. 1995)). A statute of repose can eliminate a plaintiff's cause of action before it ever accrues, and therefore, "statutes of repose have been said to 'extinguish both the right and the remedy[.]'" *Id.* (quoting *Cronin*, 906 S.W.2d at 913). Statutes of repose provide an "absolute time limit" within which actions must be brought, and our Supreme Court has characterized statutes of repose as "'an outer limit or ceiling superimposed upon the existing statute [of limitations].'" *Id.* (quoting *Harrison v. Schrader*, 569 S.W.2d 822, 826 (Tenn. 1978)). "'Where the injury occurs within the [repose] period, and a claimant commences his or her action after the [repose] period has passed, an action accrues but is barred. Where the injury occurs outside the [repose] period,

---

[6]Tennessee Code Annotated section 28-2-105 deals with adverse possession.

no substantive cause of action ever accrues, and a claimant's actions are likewise barred.'" *Id.* (quoting *Gillam v. Firestone Tire & Rubber Co.*, 241 Neb. 414, 498 N.W.2d 289, 291 (1992)).

"Despite the absolute and unyielding nature of statutes of repose," our General Assembly has provided certain exceptions to allow the commencement of a lawsuit beyond the repose period. *Id.* (citing Tenn. Code Ann. § 29-26-116 (tolling three-year medical malpractice statute of repose where fraudulent concealment alleged); Tenn. Code Ann. § 28-3-203(a) (tolling four-year statute of repose where injury from defective improvement of real estate occurs during fourth year). However, "[i]t appears that when the General Assembly has desired that exceptions apply to a statute of repose . . . the exception is either found with the language of the statute itself, or in another part of the code specifically referencing the particular statute of repose." *Id.* at 184-85.

Applying these principles, our Supreme Court, in *Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2006), held that the three-year statute of repose for medical malpractice actions is not tolled during a plaintiff's minority. The Court noted that the legislature had included an exception for fraudulent concealment within the medical malpractice statute of repose, but that no similar exception was included for minority. *Id.* (citing Tenn. Code Ann. § 29-26-116(a)(3)). Applying the statutory construction canon *expressio unius est exclusio alterius* ("'to mention one thing is to exclude others'"), *Id.* (citing *Penley v. Honda Motor Co., Ltd.*, 31 S.W.3d at 185-86, the Court refused to "rewrite the medical malpractice statute of repose to include an exception for minors when it appears from the statutory language that the Legislature did not intend such an exception." *Id.* Furthermore, the Court "stressed [its] holding in *Penley* that the legal disability statute, Tennessee Code Annotated section 28-1-106, serves to toll only statutes of limitation and not statutes of repose." *Id.* at 517 (citing *Penley*, 31 S.W.3d at 186).

Again, the construction statute of repose, Tenn. Code Ann. § 28-3-202 *et seq.*, provides that "[a]ll actions . . . shall be brought . . . within four (4) years after substantial completion of . . . an improvement." The statute supplies an exception when an injury occurs in the fourth year following substantial completion, allowing suit to be brought within one year from the date of injury. However, the statute provides no similar exception for minority, and no part of the Code, including the legal disability statute, references the construction statute of repose with respect to minors. We conclude that the injured's minority does not toll the construction statute of repose based not only upon the clear language of the statute, but also upon the Supreme Court's pronouncement that section 28-1-106 cannot operate to toll statutes of repose. *See Calaway*, 193 S.W.3d at 517 (citing *Penley*, 31 S.W.3d at 186).

In so concluding, we reject Plaintiffs' argument that the legal disability statute tolls all claims brought by minors except in the types of actions listed in section 28-1-107. Among other reasons, because section 28-1-106 does not toll statutes of repose, Plaintiffs' reliance upon section 28-1-107 is misplaced.

### B. *"Substantial Completion"*

On appeal, Defendants claim, as the trial court found, that the SAUMC renovation was "substantially completed" on November 3, 2004, and therefore, that the statute of repose commenced at the time. Thus, they argue that because the injury occurred on June 10, 2008–during the fourth year following substantial completion on November 3, 2004–the statute of repose was extended from November 4, 2008 (four years from the date of substantial completion) to June 10, 2009 (one year from the date of injury). Because they were not sued until *after* that June 2009 date–September 2009 and April 2010–the claims against them are time-barred. Plaintiffs, however, argue that "substantial completion" of the SAUMC renovations has not yet occurred. They assert that "the failure of Haltom or Riddle to secure the required permits precludes the factual conclusion that the project had reached the point of substantial completion." At a minimum, they assert that a question of fact exists as to when the construction was "substantially completed."

Included in the record before us is the November 3, 2004 invoice Mr. Haltom submitted to Riddle Construction Company for the work he performed at SAUMC. In his deposition, Mr. Haltom testified that he performed no further work after the invoice was submitted and that the renovations, including the sink, were fully operational at that time. Similarly, Mr. Riddle testified by deposition that when he sent his November 8, 2004 invoice to SAUMC, the construction project had been completed. Additionally, he stated in his affidavit that "[a]s of November 3, 2004, the renovations, including the installation of the sinks in the men's and women's restrooms, were useable and fully functional[,]" and that "[t]he renovations to the restrooms were completed by November 3, 2004."

Plaintiffs do not contend that the sink in question was less-than-fully functioning in November 2004. Instead, they argue that because the requisite permits/inspections were not obtained, "there is nothing to stop the City of Jackson from taking the necessary steps to enforce its Code and require that the project be partially or completely redone before it can be deemed substantially completed[.]" This Court has previously rejected similar arguments.

In *Meyer v. Bryson*, 891 S.W.2d 223, 225 (Tenn. Ct. App. 1994), the trial court dismissed, as time-barred, the plaintiffs' suit to recover damages from the alleged defective construction of a home, holding that the certificate of occupancy issued by the county established the date of substantial completion as a matter of law. *Id.* at 225. On appeal, however, the eastern section of this Court stated that "[I]t is probably an erroneous conclusion that issuance of a certificate of occupancy by a governmental agency establishes substantial completion of a construction project as a matter of law." *Id.* To set the date of substantial completion, this Court, instead, relied upon the unrefuted testimony of the former homeowner, noting that "[t]he fact that [the former homeowner] was of the opinion that the house was substantially completed at about the same time that a certificate of occupancy was issued is of no significance." *Id.* We rejected the plaintiffs' argument that defects in the property precluded the statute of repose from commencing, explaining that accepting their argument would defeat the statute's purpose, and we quoted with approval the following language from *Construction and Design Law* (1991):

> Substantial completion occurs when the owner can use the building for its intended use. If the owner can use the building for its intended use, then *any defects in the construction are usually held not to be material*.
>
> . . . .
>
> The definition of substantial completion may differ depending on the terms of the contract and the jurisdiction. The most popular definition, and the one used in the [American Institute of Architects] documents, is that construction is substantially complete when the owner can occupy it or use it for the purpose for which it was intended. . . .

(emphasis added) (quoting *Howard G. Lewis Constr. Co., Inc. v. Lee*, 830 S.W.2d 60 (Tenn. Ct. App. 1991)).

We again considered the term "substantial completion" in *Jenkins v. Southland Capital Corp.*, 301 S.W.3d 268, 269-70 (Tenn. Ct. App. 2008). In *Jenkins*, suit was brought against subdivision developers after three young boys were struck by a vehicle as they walked beside the road in a residential subdivision. The suit claimed, among other things, that the developers were negligent in failing to timely install a sidewalk. *Id.* at 270. The developers, however, moved for summary judgment based on the statute of repose set forth in Tennessee Code Annotated section 28-3-202. *Id.* at 271. The developers asserted that the lots in question were "substantially completed" either when the properties passed final inspection or when they were transferred to individual homeowners. *Id.* The trial court granted the developers' motion for summary judgment, but the plaintiffs appealed, arguing that "substantial completion" could not occur until the sidewalks were installed, as required

by the Shelby County Code. *Id.* at 273. In rejecting the plaintiffs' argument, we examined the statutory definition of "substantial completion," noting that in interpreting statutes, we are to "'give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Id.* at 274 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). We observed that the statute was enacted "'to insulate contractors, architects, engineers and the like from liability for their defective construction or design of improvement to realty where . . . the injury happens more than four years after . . . substantial completion . . . .'" *Id.* at 274 n.9 (quoting *Watts v. Putnam County*, 525 S.W.2d 488, 492-93 (Tenn. 1975) (commenting that the statute might be "inequitable and undesirable" but nevertheless reflects "the clear legislative intent."). Applying *Meyer*, we concluded that requiring the installation of sidewalks as a precursor to "substantial completion" was "too circumscribed an interpretation of the statute[,]" and that such a narrow interpretation would defeat the statutory purpose of limiting claims. *Id.* at 275. Notwithstanding the absence of sidewalks, we determined that substantial completion occurred when "the lot at issue, including but not limited to the house, [could] be used for its intended purpose as a residence[,]" specifically noting that "this may or may not coincide with the approval of a governmental entity such as the Memphis and Shelby County Construction Code Enforcement Office; passing such a final inspection is indicative of substantial completion but not necessarily determinative." *Id.* The absence of the requisite sidewalks, we stated, was "not a defect that would prevent the lots from being used for their intended purpose, as residences." *Id.*

Applying *Meyer* and *Jenkins* to the instant case, we simply cannot adopt Plaintiffs' reasoning that the failure to obtain the requisite permits or inspections–such that the City could require any defects be remedied–precludes a conclusion that the sink was substantially complete. Moreover, because the sink has, without dispute, been used for its intended purpose since November 3, 2004, we find that there exists no question of fact as to the date of substantial completion. Based upon the November 3, 2004 substantial completion date, Plaintiffs had until June 10, 2009 to bring suit against Defendants. Because they failed to do so, and the time period was not tolled due to the injured's minority, we must affirm the trial court's conclusion that Plaintiffs' claims against Defendants are time-barred.[7] *See*

---

[7]In their reply brief to this Court, Plaintiffs raise a third argument. Pursuant to Tennessee Code Annotated section 28-3-202 ("All actions . . . shall be brought against *any person* . . . within four years after substantial completion . . . .") (emphasis added), they contend that because they sued SAUMC and the YMCA prior to June 10, 2009, their amendments to name Defendants were somehow also timely, arguing that we "should not modify the plain meaning of 'any' and thereby limit the meaning of 'any' to a specific 'person' or extend the meaning of 'any' to every 'person.'" Because this issue was apparently first raised in their reply brief, we will not address its merits on appeal. *See Waters v. Farr*, 291 S.W.3d 873, 918
(continued...)

*Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2006) (quoting *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 184 (Tenn. 2000) ("'Where the injury occurs within the [repose] period, and a claimant commences his . . . action after the [repose] period has passed, an action accrues but is barred.'").

## V.  CONCLUSION

For the aforementioned reasons, we affirm the trial court's grants of summary judgment. Costs of this appeal are taxed to Appellants, Selena A. Etheridge and Christopher J. Etheridge, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[7](...continued)
(Tenn. 2009) (citations omitted); *State ex rel. Cottingham v. Cottingham*, No. M2008-02381-COA-R3-CV, 2010 WL 2943283, at *3 (Tenn. Ct. App. July 27, 2010) *perm. app. denied* (Tenn. Jan. 12, 2011).