# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 13, 2015 Session

## MARY RIDENOUR, ET AL. v. COVENANT HEALTH, ET AL.

### Appeal from the Circuit Court for Anderson County
No. B4LA0016     Donald R. Elledge, Judge

———————————

### No. E2014-01408-COA-R3-CV-FILED-JUNE 9, 2015

———————————

This appeal arises from a construction negligence case. Mary Ridenour, individually, and, Jacob[1] Ross Ridenour, a minor by Mary Ridenour ("Plaintiffs"), sued Covenant Health, Rentenbach Engineering Company, and TEG Architects, LLC, ("Defendants," collectively) in the Circuit Court for Anderson County ("the Trial Court"). Plaintiffs alleged that the absence of shielding in a portion of the radiology facilities in the new emergency department at Methodist Hospital caused Plaintiffs to suffer damages from excessive radiation exposure. Defendants filed motions for summary judgment asserting the statute of repose, Tenn. Code Ann. § 28-3-202 (2000), as a complete defense. The Trial Court granted Defendants' motions for summary judgment. Plaintiffs appeal to this Court arguing, in part, that the statute of repose did not run because the absence of the required shielding in the radiology facilities meant the project was not substantially completed on the date as found by the Trial Court. We hold, *inter alia*, that the radiology facilities, while perhaps defective, were used for their intended purpose and were substantially complete as found by the Trial Court. The construction statute of repose expired and serves to defeat Plaintiffs' claims. We affirm the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

John D. Agee, Clinton, Tennessee, for the appellants, Mary Ridenour, individually and Jacob Ross Ridenour, a minor by Mary Ridenour.

---

[1] The minor Jacob Ross Ridenour's first name is given as "James" on his brief, but most documents reflect his name as "Jacob."

F. Michael Fitzpatrick and Rachel Park Hurt, Knoxville, Tennessee, for the appellee, Covenant Health.

Howard E. Jarvis, Dean T. Howell, and April A. Carr, Knoxville, Tennessee, for the appellee, Rentenbach Engineering Company.

R. Loy Waldrop, Jr., W. Paul Whitt, and Janet S. Hayes, Knoxville, Tennessee, for the appellee, TEG Architects, LLC.

## OPINION

### Background

The background facts of this case are relatively straightforward. Plaintiffs, along with several other similarly situated parties, filed a complaint in January 2014 against Defendants alleging that they were exposed to excessive radiation from the radiology facilities at Methodist Hospital. Defendants were involved with the construction project at Methodist Hospital, including the radiology facilities, in some capacity. Mary Ridenour alleged that portions of walls lacked the necessary lead shielding, and that this defect led to her and her gestating child's exposure to excessive radiation while she worked at the hospital. Defendants filed answers in opposition. Certain of Defendants raised comparative fault against Methodist Medical Center of Oak Ridge ("MMC"), or, alternatively, that Covenant Health owned the facilities. Defendants later filed motions for summary judgment in which they asserted that the construction statute of repose was a complete defense. Plaintiffs filed a Motion for Leave to File Amended Complaint and Motion to Quash Notices of Hearing. Plaintiffs sought to add MMC as a Defendant to the complaint. The Trial Court granted Plaintiffs' Motion to Quash, allowing additional time to take discovery on the issues of substantial completion and the statute of repose.

In June 2014, the Trial Court heard Defendants' motions for summary judgment as well as Plaintiffs' motion to add MMC as a party. The Trial Court granted Defendants' motions for summary judgment and denied Plaintiffs' Motion to Amend. The Trial Court incorporated its oral ruling into its order, which we quote from:

We're here today on the case of Michael Phillips, Case No. B4LA0014, Connie Raby, B4LA0015, Mary Ridenour, et al., B4LA0016, Keith Gillis, B4LA0017, and Micah Lewellen, et al., B4LA0018, all versus Covenant Health, Rentenbach Engineering, doing business as Rentenbach Constructors, Inc., and TEG Architects, LLC.

-2-

We're here as a result of a motion for summary judgment being filed under Rule 56 and, would advise counsel, under Rule TCA 20-16-101, which basically reversed the finding in Hanna[n] vs. Alltel, where the parties who do not bear the burden of proof, it reversed - - it went from putting it on - - or reversing it to trial. And I was a part of that. Martin vs. Southern Railroad and Hanna[n] vs. Alltel were both debated on the floor. But it takes us back to what it was before Hanna[n] vs. Alltel. It's back to "put up or shut up." That's the language that's used in the discussion.

It is uncontroverted that litigation in each of these cases was filed on or about January 13, 2014, or thereafter. It is uncontroverted that in each of these litigations, specifically in paragraph 9, that the emergency department was substantially completed and opened in February of 2006.

I read the complaint again twice yesterday, and nowhere in the complaint could I find any allegation of fraud or wrongful concealment. It is undisputed that this is a construction lawsuit, and when you read the allegations set out in the complaint, it's a construction lawsuit. It's an errors and omissions lawsuit, where one panel of lead-lined Sheetrock was left out of the x-ray room.

And it's uncontroverted and undisputed that the imaging center was substantially complete to the point of making it available for its intended use as an emergency room no later than March 23, 2006. That's the affidavit of Anthony Pettitt that attached the Certificate of Compliance under Exhibit A. It's undisputed that the code enforcement supervisor, Danny Boss, for the City of Oak Ridge issued a use permit for the emergency room on or about April 4, 2006. But, factually, the emergency room was in fact being used at the end of March through December of 2013, at which time the lead-lined wall was then constructed. December 2013, they added lead shielding that was omitted. That's in the deposition of David Newman, page 11, line 3 through 6, page 15, line 5 through 9.

I have read the report of Roy Osborne. I find that that report and several of the items submitted by Plaintiff in response to the statement of facts and their allegations of additional statements of facts do not comply with Tennessee Rules of Civil Procedure 56.06. But even taking into consideration Roy Osborne's report, it does not set out and does not mention the absence of any lead-lined wall or knowledge - - and that's important, knowledge - - that the lead-lined wall was not appropriately built. To the contrary, it said it had adequate lead-lined shielding. So even

if I took it into consideration, it doesn't rise to the effect of fraud or concealment, which hasn't been pled.

We're here on the statute of repose, and I'll remind counsel, and it becomes a part of my ruling today, that under 28-3-201 under "Definitions," "Substantial completion means that degree of completion of a project, improvement, or a specified area or portion thereof (in accordance with the contract documents, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended." It also says, "The date of substantial completion may be established by written agreement between the contractor and owner."

We had a notification, pursuant to the statute, that was filed and is considered by the Court a notice of substantial completion on March 23, 2006, between the contractor and the owner. We had the fact that from March of 2006 till December of 2013, it was used for the purpose for which it was intended. It was an x-ray room, it was a CT room, and that's what it was used for.

Then we look at "Limitation of Actions," and this is where the statute of repose comes in, TCA 28-3-202. "All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property must be" - - it goes on - - "must be brought against the person performing or furnishing the design, planning, supervision, construction within four years after substantial completion of such an improvement."

TCA 28-3-203 says if you suffer the injury in the fourth year, then, of course, it adds a year to it.

And then 28-3-205 specifically sets out "Limitation not defense for party in possession, guilty of fraud, who conceals cause of action." Under subparagraph (b), "The limitation provided shall not be available as a defense to any person who shall have been guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, construction of" - - and then it goes on about land - - "who shall wrongfully conceal any such action."

-4-

As mentioned before, that's not an issue before the Court, but even if it were, there is nothing that this Court can find of any allegation of wrongful concealment.

The Court finds that the case that most appropriately matches, to the Court - - and I know intelligent minds differ frequently on what a case says, but that's why we have courts of appeals, and this came out of the Court of Appeals. Counts Company vs. Praters, Inc., 392 S.W.3d 80, goes through case after case that specifically addresses each of the issues that we have here.

And let me first go over substantial completion, and it defines substantial completion on page 84. It defines it under TCA 28-3-201, just as I have. And in this case, it argued about the flooring was installed in 2006, and they resurfaced it in 2007. It talks about two different incidences, just as we've talked about here. But the Counts court recites Watts v. Putnam County, where it says that TCA 28-3-202 "explained that it was a statute that was designed to create an 'outer limit'" - - quotations, their quotations, not mine - - "of liability to all potential actions based on injury to the property, 'without regard to the date of the discovery.' 28-3-202 did not extend any statute of limitations, but rather was 'superimposed' on existing statutes, and was unrelated to the accrual of any cause of action since it expressly stated that it began to run on the date of substantial completion rather than the date of injury or damage. The Court agreed with the decision from the Federal Court for the Eastern District of Tennessee, wherein it was held that the legislative intent in passing 28-3-202 was to 'insulate contractors, architects, engineers and the like from liability for their defective construction or design of improvements to property where either the occurrence giving rise to the cause of action or injury happens more than four years after substantial completion of the improvement.'"

So as it pertains to fraud and concealment, the plaintiff in this case, it was argued that "defendant was guilty of fraudulent concealment/concealment sufficient to toll TCA 28-3-202," pursuant to, of course, TCA 28-3-205, and it cites Cunha and Conley. "However, plaintiff failed to properly plead this claim. Plaintiff did allege in its amended complaint that they 'led parties to believe that the repair work it performed in 2007'" - - that's where we go to the two different dates - - " 'had resolved the problem. Praters knew or should have known that these representations were false as the floor cupping did not correct itself after moisture problems,'" etcetera. It says, "In order to toll the statute, plaintiff

-5-

must allege 'the cause of action was known to the defendant and fraudulently concealed by him.'"

I have nothing in the record, nothing, that says that, not in the pleadings, not in the affidavits, not in the depositions that have been filed.

"Tennessee Rules of Civil Procedure 9.02 requires that 'in pleadings averring fraud, the circumstances constituting fraud 'shall be stated with particularity'.' Plaintiff failed to state circumstances constituting fraudulent concealment with particularity, as the only circumstances alleged by the plaintiff was the problem did not resolve as defendant said it would." Again, it goes on.

It's a good case. I researched it and couldn't find where it's been modified as it pertains to the issues before the Court today. I think <u>Counts Company vs. Prater</u> hits on all four corners on this case.

I think and I so find that as set out, I have nothing that contradicts the date of completion, of substantial completion, as defined by statute and case law being on or about March 23, 2006. I find nothing, nothing, in the record that contradicts the fact that none of the defendants in this case knew or attempted to fraudulently conceal any cause of injury that is allegedly suffered by the plaintiffs in each of these five cases.

The ownership of the property is clear, but the fact is, Methodist Medical Center is not a party to this litigation, and if they were, it would apply to them also. The undisputed, verified, pursuant to Rule 56, information before the Court for the Court to take into consideration is Methodist Medical Center owned the property, Jan McNally, as president of the corporation, signed the contract with the engineers and the construction company. The deed to the property, as presented to the Court, is owned by Methodist Medical Center. It's a separate corporate entity that is not a party to this litigation, but, obviously, even if it were, the ruling of the Court would apply to them also. We have pending a motion to join Methodist Medical Center.

Even in the proposed amended complaint that's been filed in this case, nowhere does it mention fraud or concealment that I can recall. And, again, I read it all again yesterday. I read the complaints again yesterday to ensure that the statutes and case law as I read them was consistent with the proof that had been submitted to me under Rule 56.

For those reasons, I find that the motions for summary judgment filed in each of the five cases by each of the defendants in this cause of action are valid, and the Court would grant the same. I would tax the cost to the plaintiffs.

Plaintiffs appeal.

## **Discussion**

Although not stated exactly as such, Plaintiffs raise the following issues on appeal: 1) whether the Trial Court erred in granting summary judgment to Defendants when, according to Plaintiffs, issues of fact existed concerning the substantial completion of the project at question and whether exceptions to the statute of repose applied; 2) whether the Trial Court erred in denying Plaintiffs' motion to amend to add MMC as a party; and, 3) whether the Trial Court erred in limiting discovery to the date of substantial completion when other relevant issues were before the Trial Court.

With regard to summary judgments, this Court explained in *Estate of Boote v. Roberts*:

The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

This action was filed [after July 1, 2011]. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101. That statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).

*Estate of Boote v. Roberts*, No. M2012-00865-COA-R3-CV, 2013 WL 1304493, at \*\*8-9 (Tenn. Ct. App. March 28, 2013), *no appl. perm. appeal filed* (footnotes omitted).

The construction statute of repose states as follows:

All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after *substantial completion* of such an improvement.

Tenn. Code Ann. § 28-3-202 (2000) (emphasis added).

Substantial completion is defined as follows:

"Substantial completion" means that degree of completion of a project, improvement, or a specified area or portion thereof (in accordance with the contract documents, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended; the date of substantial completion may be established by written agreement between the contractor and the owner.

Tenn. Code Ann. § 28-3-201(2) (2000).

We first address whether the Trial Court erred in granting summary judgment to Defendants when, according to Plaintiffs, issues of fact existed concerning the date of the substantial completion of the project at question and whether exceptions to the statute of repose applied. Plaintiffs argue that the absence of the shielding in the wall means that the construction project was not substantially completed until that defect was corrected. Therefore, according to Plaintiffs, the statute of repose did not expire because it never started running until the defect was corrected.

-8-

To resolve this issue, we must consider the definition of substantial completion. Substantial completion does not mean perfect completion according to the exact specifications. Otherwise, the qualifying word "substantial" before "completion" would have no meaning. Rather, as reflected in the statutory definition quoted above, substantial completion means that the project or improvement can be used for its intended purpose. The undisputed evidence in the record on appeal is that the emergency department, including the CT room at issue, was used from March 2006. The fact that the improvement allegedly was defective does not prevent that improvement from being substantially complete. This Court in addressing this issue has stated:

> This Court again reiterated that in *Meyer*, the Court rejected the argument that substantial completion cannot occur until all defects have been repaired, and stated that a building is substantially complete when it can be used for its intended purpose, even if it has some defects, and thus subsequent repairs do not affect the date of substantial completion. *Id*.
>
> In this case, plaintiff's allegation that the attempted repairs by defendant would change the date of substantial completion is a conclusion, not accepted by the courts. The above cases make clear that the date of substantial completion is determined by the date upon which the improvement can be used for that which it was intended, and there is no dispute herein that these floors were completed, i.e. installed, by May 2006. The fact that a repair was attempted by Praters one year later does not change the date of substantial completion under case law. Plaintiff's attempt to characterize the work done in 2007 as "additional work" rather than a "repair" is misguided. There can be no serious argument that the additional work done in 2007 was anything more than an attempt to repair a floor that was unsatisfactory.

*Counts Co. v. Praters, Inc.*, 392 S.W.3d 80, 86 (Tenn. Ct. App. 2012).

In our view, adopting Plaintiffs' argument would vitiate the very purpose of the construction statute of repose. Under Plaintiffs' position, every defective construction project would be considered not substantially complete for purposes of the relevant statute of repose. This surely is not what our General Assembly intended. Rather, it is clear that our General Assembly intended through the construction statute of repose to set an outer limit to liability arising from defective work on improvements to real property. The undisputed evidence is that the CT room was, in fact, used for its intended purpose starting in 2006. The Trial Court did not err when it found there was no

genuine dispute that the date of substantial completion was "on or about March 23, 2006."

Plaintiffs argue further that exceptions to the statute of repose apply. The exceptions are stated as follows:

(a) The limitation provided by this part shall not be asserted as a defense by any person in actual possession or the control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action.

(b) The limitation hereby provided shall not be available as a defense to any person who shall have been guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying, in connection with such an improvement, or to any person who shall wrongfully conceal any such cause of action.

Tenn. Code Ann. § 28-3-205 (2000).

As found by the Trial Court, no exception applies. First, it is undisputed from the record that Methodist Hospital was in ownership, possession, and control of the CT room at all relevant times in this case. Regarding fraud or wrongful concealment, we find, as did the Trial Court, that Plaintiffs did not plead this with sufficient particularity. Although Plaintiffs alleged that Defendants falsely or deceptively omitted material facts regarding the defect, they do not specify how. The fact that a construction defect exists and goes unnoticed does not in itself constitute fraud or wrongful concealment. To hold otherwise would mean that most every construction defect could be considered a species of fraud which would, once again, vitiate the intention and purpose of the construction statute of repose. Plaintiffs' argument ignores the underlying intention and purpose of the statute of repose and the exceptions thereto. Our General Assembly made a public policy decision when it enacted the improvement to real property statute of repose, as is its responsibility.

The evidence in the record is undisputed, as found by the Trial Court, that the relevant CT room project was substantially completed by March 2006. Plaintiffs filed the present lawsuit in January 2014. The four year statute of repose had long expired, and this serves to defeat Plaintiffs' claims. We hold, as did the Trial Court, that the

construction statute of repose applies to defeat Plaintiffs' claims and that none of the statutory exceptions apply.[2]

We next address whether the Trial Court erred in denying Plaintiffs' motion to amend to add MMC as a party. The abuse of discretion standard applies. Our Supreme Court has stated:

> The grant or denial of a motion to amend a pleading is discretionary with the trial court. *Harris v. St. Mary's Med. Ctr., Inc.*, 726 S.W.2d 902, 904 (Tenn. 1987). Generally, trial courts must give the proponent of a motion to amend a full chance to be heard on the motion and must consider the motion in light of the amendment policy embodied in Rule 15.01 of the Tennessee Rules of Civil Procedure that amendments must be freely allowed; and, in the event the motion to amend is denied, the trial court must give a reasoned explanation for its action. *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 238 (Tenn. Workers' Comp. Panel 1993). Although permission to amend should be liberally granted, the decision "will not be reversed unless abuse of discretion has been shown." *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994). Factors the trial court should consider when deciding whether to allow amendments include "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979).

*Cumulus Broadcasting, Inc., v. Shim*, 226 S.W.3d 366, 374 (Tenn. 2007).

In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the

---

[2] Our holding applies also to the minor appellant as minority does not toll the statute of repose. *See Etheridge ex rel. Etheridge v. YMCA of Jackson*, 391 S.W.3d 541, 547 (Tenn. Ct. App. 2012).

court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

In its written order, the Trial Court stated that Plaintiffs' motion was "futile." In addition, the Trial Court elaborated on its reasoning in its oral ruling as quoted above. The Trial Court did not commit reversible error in declining to add MMC as a party because to have granted the motion would not have altered the outcome of Plaintiffs' case against Defendants. The statute of repose still would have served to defeat Plaintiffs' claims against Defendants. We find no abuse of discretion by the Trial Court on this issue.

The final issue we address is whether the Trial Court erred in limiting discovery to the date of substantial completion when other relevant issues were before the Trial Court. "Decisions concerning pretrial discovery are matters well within the discretion of the trial court and thus are reviewed under an abuse of discretion standard." *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 600 (Tenn. Ct. App. 2007). Plaintiffs fail to adequately articulate what additional discovery they believe was necessary for the resolution of this case. We also note that it appears from the record that Plaintiffs were, in fact, given sufficient opportunity for discovery as to the dispositive issue before the Trial Court, that of the date of substantial completion. We hold that the Trial Court did not abuse its discretion in limiting discovery thusly.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Mary Ridenour, individually and Jacob Ross Ridenour, a minor by Mary Ridenour, and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE